In re **PLAYER WIRE WHEELS, LTD.**, Debtor.

No. 09–40906.

United States Bankruptcy Court, N.D. Ohio.

Feb. 25, 2010.

Andrew W. Suhar, Melissa M. Macejko, Suhar & Macejko, LLC, James G. Floyd, Newman, Olson & Kerr, Youngstown, OH, for Debtor.

## MEMORANDUM OPINION REGARDING MOTION FOR STAY PENDING APPEAL

KAY WOODS, Bankruptcy Judge.

Before the Court is Motion for Stay Pending Appeal ("Motion for Stay") (Doc. # 190) filed on February 9, 2010, by Beverly A. Starr ("Mrs. Starr"). The Motion for Stay relates to Notice of Appeal (Doc. # 167) filed by Mrs. Starr on January 8, 2010, which appeals: (1) Memorandum Opinion Regarding Motion to Dismiss (Doc. # 48) and Order Denying Motion to Dismiss entered on April 9, 2009 (Doc. # 49); and (2) Memorandum Opinion Regarding Confirmation of First Amended Chapter 11 Plan of Liquidation (Doc. # 160) and Order: (i) Overruling Objection of Beverly A. Starr; (ii) Determining Ballot of Beverly A. Starr Shall Not be Counted; and (iii) Confirming First Amended Chapter 11 Plan of Liquidation entered on December 30, 2009 (Doc. # 161) (collectively, "Confirmation Order").

Mrs. Starr requests this Court to stay "confirmation of the Chapter 11 Plan of Liquidation" pending her appeal (Mot. for Stay ¶ 11), arguing that she will be harmed if the Court does not impose the requested stay, but imposition of the stay will not harm any other party. (*Id.* ¶ 14.) In addition, Mrs. Starr requests that the Court require either no supersedeas bond or, in the alternative, only a minimal bond in connection with imposition of the stay. (*Id.* at 7.)

On February 12, 2010, two objections were filed in response to the Motion for Stay, as follows: (i) Debtor Player Wire Wheels, Ltd. ("Debtor") filed Debtor's Objection to the Motion of Beverly A. Starr for Stay Pending Appeal ("Debtor's Objection to Stay") (Doc. # 192); and (ii) Player Wheel Group, Ltd. ("Buyer") and Fountain Valley Holdings, Ltd. ("Fountain") filed Objection to Motion for Stay ("Buyer's Objection to Stay") (Doc. # 194) (Debtor, Buyer and Fountain collectively, "Objectors"). Objectors assert that Mrs. Starr has failed to meet her burden for imposition of a stay. They argue that imposition of a stay will result in harm to all creditors, employees and third parties, whereas Mrs. Starr will not be harmed if a stay is not imposed. In addition, Debtor contends that, if this Court grants the Motion for

Stay, Mrs. Starr must be required to post, at minimum, a $4 million bond. Moreover, Buyer contends that: (i) it is operating the business with financing from PNC Bank ("Bank"); and (ii) "all of the conditions to effectiveness required by the [P]lan have been met in substance and that only a procedural notice of the same by Debtor is outstanding." (Buyer's Obj. to Stay ¶ 10.)

On February 19, 2010, Mrs. Starr filed Reply Brief in Support of Motion for Stay Pending Appeal ("Reply Brief") (Doc. # 195). In her Reply Brief, Mrs. Starr reiterates the arguments in the Motion for Stay.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I. BACKGROUND

On December 16, 2009, the Court held a hearing ("Confirmation Hearing") on confirmation of Debtor's First Amended Chapter 11 Plan of Liquidation ("Plan") (Doc. # 137) dated November 3, 2009. Mrs. Starr filed the only objection to the Plan.

Debtor, an Ohio limited liability company, was formed in 2000 by Ray A. Starr, Sr. ("Ray Starr") as the sole member. Mrs. Starr and Ray Starr were formerly married, but their marriage was dissolved in 2005. In connection with dissolution of their marriage, Mrs. Starr and Ray Starr entered into a Separation Agreement, pursuant to which Ray Starr agreed to pay Mrs. Starr $11 million to equalize the divi-

sion of marital property. Part of the property settlement involved a $5.5 million promissory note ("Note") to be paid by Ray Starr to Mrs. Starr over a five-year period at 5% simple interest. The Note was to be paid in equal monthly installments of $105,000.00 on the first day of the month beginning October 1, 2005. In connection with the Note, Ray Starr executed a Pledge Agreement dated August 4, 2005, whereby Ray Starr pledged as security for the Note all of the Membership Units in Debtor. Pending payment in full of the Note, the Membership Units were held in escrow, 20% of which were to be released each year upon completion of payments by Ray Starr to Mrs. Starr.

Ray Starr died on September 6, 2008. At the time of his death, Ray Starr had made monthly payments to Mrs. Starr for three years, which resulted in payment of 60% of the Note's balance. Subsequent to Ray Starr's death, the executors of Ray Starr's estate, Roy L. Crick and David Starr (collectively, "Executors"), made five monthly payments on the Note to Mrs. Starr (October through December 2008, and January and February 2009). Prior to Ray Starr's death, the escrow agent had released 40% of the Membership Units, but had not released the 20% relating to the third-year payments. The Note was not paid in full within 180 days after the death of Ray Starr.

As a consequence, at the time Debtor filed its chapter 11 petition on March 21, 2009 ("Petition Date"), the estate of Ray Starr, acting through the Executors, owned all of the Membership Units in Debtor. Mrs. Starr has alleged a default under the Note and the Pledge Agreement ("Alleged Default"). A separate arbitration proceeding not related to this bankruptcy case ("Arbitration Proceeding") is pending to determine: (i) whether the Alleged Default occurred; and (ii) how many

of the Membership Units, if any, should be released to Mrs. Starr. A hearing in the Arbitration Proceeding began on December 7, 2009, and was scheduled to conclude on February 10, 2010. (Mot. for Stay ¶ 8.) As a consequence, as of the date of the Confirmation Hearing, (i) the Executors continued to hold all of the Membership Units in Debtor; and (ii) Mrs. Starr did not hold any Membership Units or other equity interest in Debtor. At no time has Mrs. Starr been a creditor of Debtor. Only the estate of Ray Starr owes Mrs. Starr a debt relating to the Note; Debtor owes no money to Mrs. Starr.

As set forth in the Confirmation Order, the Court determined that Mrs. Starr was a party in interest with the right to be heard regarding confirmation of the Plan. The Court further held, however, that Mrs. Starr was not entitled to vote on Debtor's Plan because she had neither a claim against the bankruptcy estate nor an equity interest in Debtor.

## II. MRS. STARR'S ARGUMENTS IN SUPPORT OF A STAY

In the first instance, the Court notes that it is not clear what specific relief Mrs. Starr seeks. Although she asks for a stay pending appeal, Mrs. Starr fails to specify what she wants this Court to stay or what actions this Court is able to stay at this juncture. Mrs. Starr claims to want a stay of "confirmation" of the Plan, but, because this Court entered the Confirmation Order more than one month ago, "confirmation" has already occurred. If this Court deems Mrs. Starr's request to require a stay of "implementation of the confirmed Plan," that request is problematic because the primary objective of the Plan—*i.e.*, liqui-

dation of Debtor's assets—has already occurred. As a consequence, it is too late to stay closing of the sale of Debtor's assets to Buyer.[1]

■ Although Mrs. Starr filed Notice of Appeal on January 8, 2010, she waited 32 days before filing the instant Motion for Stay. She allowed 41 days to lapse after the Court entered the Confirmation Order before seeking a stay pending appeal. Mrs. Starr argues that Debtor was aware that she timely filed the Notice of Appeal and seems to imply that such awareness required Debtor to refrain from taking any action to implement the Plan. To the extent this implication is one of the bases for Mrs. Starr's Motion for Stay, such argument must fail because the mere filing of an appeal does not operate as a stay; unless and until a court issues a stay order, nothing prevents a debtor from taking actions in accordance with a confirmed plan.

Objectors argue that Mrs. Starr has not met the burden imposed by Federal Rule of Bankruptcy Procedure 8005, which is akin to the showing that must be made to obtain a preliminary injunction. (Debtor's Obj. to Stay ¶ 13; Buyer's Obj. to Stay at 4.) Objectors argue that Mrs. Starr has not and cannot establish any of the elements necessary for imposition of a stay.

■ This Court must balance four factors in determining whether to grant a stay to Mrs. Starr, as set forth in *In re Bailey*, Case No. 09–8077 (B.A.P. 6th Cir. Feb. 12, 2010).

The debtors' motion for a stay is governed by Fed. R. Bankr.P. 8005. Under Sixth Circuit law, we must balance four factors when deciding whether a stay

---

1. Mrs. Starr alleges that "Debtor's counsel has represented that the confirmed plan has not yet been implemented" (Mot. for Stay ¶ 6), but this Court has no idea when such

alleged representation was made or what this statement means in light of closing of the sale of Debtor's assets to Buyer.

should issue: (1) whether the applicant has demonstrated a likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other interested parties; and (4) where the public interest lies. *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927, 928 (6th Cir.2002); *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991).

*Id.* at 1. *See, In re Level Propane Gases, Inc.*, 304 B.R. 775, 777 (Bankr.N.D.Ohio 2004) ("In determining whether the issuance of a stay pending appeal is appropriate the Court is required to balance four factors: (1) the likelihood that the party seeking the stay will prevail on the merits on appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will not be substantially harmed if the court grants the stay; and (4) the public interest in granting the stay."); *and Star Bank, N.A. v. Newartesian Ltd. P'ship (In re Artesian Indus., Inc.)*, Case Nos. 92–62018, 93–6121, 1993 WL 590021, at *2 (Bankr.N.D.Ohio Dec. 16, 1993) ("The court finds that the four-factor test used in preliminary injunction analyses is applicable to motions brought under Rule 8005.").

■ The burden of proof is on the party seeking imposition of the stay and such burden is the preponderance of the evidence. *Sicherman v. Ohio Rehab. Servs. Comm'n (In re Dial Indus., Inc.)*, 137 B.R. 247, 249 (Bankr.N.D.Ohio 1992) (citing *Hamilton v. Lomas Mortgage U.S.A. (In re Hamilton)*, 95 B.R. 564, 565 (N.D.Ill. 1989)).

■ Applying the four-factor test, this Court finds, as set forth below, that Mrs. Starr has failed to set forth any facts that warrant imposition of a stay in this case.

■ **1. MERITS OF MRS. STARR'S APPEAL.** In the Reply Brief, Mrs. Starr posits that Objectors "are arguing that [Mrs. Starr] must convince this Court that [Mrs. Starr' s] appeal of this Court's judgment will be successful and that this Court's judgment will be overturned on appeal. If that were indeed the standard, then no stay would ever be granted." (Reply Br. at 4.) Although there is an inherent contradiction in having to establish to the court that entered the decision being appealed that there are merits to the appeal, Mrs. Starr has misconstrued her burden in stating that she is required to "convince" this Court that the Confirmation Order will be "overturned." Notwithstanding the inherent contradiction, the merits of Mrs. Starr's appeal is one of the factors this Court must consider in ruling on the Motion for Stay.

The first issue to be addressed, then, is the degree of likelihood of success on the merits of NewArtesian's appeal. [*In re*] *DeLorean* [*Motor Co.*], 755 F.2d [1223] at 1228 [ (6th Cir.1985) ]. While NewArtesian need not demonstrate a strong or substantial likelihood of success, it must show that there is more than a mere possibility that it will prevail on appeal. *Id.* at 1228–29. The extent of NewArtesian's burden is largely dictated by the strength of the other three factors to be considered by the court. *Id.* at 1229–30. The court recognizes the "inherent contradiction" noted by Judge Snow in *In re Barrett*, [Case No. 88–04214, 1993 WL 52846 (Bankr. N.D.Ohio Feb. 26, 1993) ], in a bankruptcy judge concluding that the district court will likely reverse him on appeal. It will be sufficient for NewArtesian to show that the issue on appeal is sufficiently novel, or that courts are sufficiently divided, so that there is a "reasonable likelihood" of success. *Id.* at *1.

*In re Artesian Indus., Inc.,* 1993 WL 590021, at *2.

Mrs. Starr has failed to demonstrate that there is a reasonable likelihood that she will prevail on the merits of her appeal. At most, Mrs. Starr argues that the Arbitration Proceeding is progressing and that the hearing may now be or will soon be concluded. However, even if Mrs. Starr prevails in the Arbitration Proceeding and is awarded all of the Membership Units still held in escrow, she would not be entitled to vote on the Plan. Moreover, even if Mrs. Starr's negative ballot in the amount of 60% of the Membership Units were to be counted,[2] Debtor's Plan was capable of being crammed down.

Moreover, Mrs. Starr's failure to establish any of the other three factors, as discussed below, dictates a more substantial burden on this factor. Thus, Mrs. Starr has not carried her burden that she may prevail on the merits of her appeal.

**2. *NO IRREPARABLE HARM TO MRS. STARR.*** Mrs. Starr has failed to show that she will suffer irreparable harm unless a stay is imposed. Mrs. Starr recites a litany of events—i.e., "the broken promises on [sic] settlement, the subsequent filing of the Bill of Sale and Notices of Closing of Sale, the belated settlement offer, and the impending arbitration evidentiary hearing" (Mot. for Stay ¶ 11.)—but these events do not indicate that she will be irreparably harmed. Mrs. Starr alleges that implementation of the Plan will terminate her rights to the Membership Units. She argues that she will be harmed because her "substantial rights" will be "forever bared [sic]" and she will not "have control over her own fate" unless this Court imposes a stay. (*Id.* ¶ 12.) Mrs. Starr does not articulate what these "substantial rights" are, but the Court assumes Mrs. Starr means that she will not be able to exercise "control" of Debtor's business, as an equity owner, if any Membership Units are subsequently awarded to her at the conclusion of the Arbitration Proceeding.[3] This argument, however, fails because the Plan provides for the value of Class 5—Equity Interests—*i.e.,* $385,000.00—to be held and not distributed until the Arbitration Proceeding is final. As a consequence, since Mrs. Starr will receive the value of any Membership Units to which she may become entitled, she cannot demonstrate irreparable harm in the event a stay is not imposed. (Buyer's Obj. to Stay ¶ 14.)

Mrs. Starr argues that, if Debtor's assets are transferred to Buyer, she will lose the ability to "take possession and title to the [M]embership [U]nits . . . in exchange for the outstanding debt; . . . take possession of the [M]embership [U]nits for the purpose of resale, either by private sale or public auction; . . . have the escrow agent take possession of the [M]embership [U]nits . . . for the purpose of sale; or . . . exercise any of the myriad of rights available to her under the Ohio version of the

---

**2.** This assumes all 60% of the Membership Units being held in escrow are awarded to Mrs. Starr. However, Ray Starr and/or the Executors of his probate estate made 41 of the 60 Note payments to Mrs. Starr prior to the Petition Date. As a consequence, if the award in the Arbitration Proceeding is commensurate with the outstanding Note balance, Mrs. Starr would receive 32% of the Membership Units.

**3.** Mrs. Starr asserts that she is "entitled to exercise rights of membership in the Debtor...." (Mot. for Stay ¶ 1.) This statement is factually wrong. As Mrs. Starr has conceded, at best she has merely the *potential* for a future equity interest in Debtor in some undetermined amount. Mrs. Starr did not hold any equity interest or Membership Units in Debtor at any time during the pendency of Debtor's case, including up through the Confirmation Hearing.

Uniform Commercial Code." (Reply Br. at 2.) The truth, however, is that under no circumstance will Mrs. Starr be able to assert the rights she describes. These rights were affected when Debtor filed its chapter 11 petition because, upon filing a chapter 11 petition, a debtor operates for the benefit of its creditors, not its equity security holders. *If*—which was not the case—Mrs. Starr had been awarded and held Membership Units in Debtor during the pendency of Debtor's bankruptcy case, she would likely have been authorized to sell such equity interest, or, if she continued to hold the Membership Units at the time Debtor filed the Plan, she may have been entitled to vote on the Plan. Indeed, as Mrs. Starr argued at the Confirmation Hearing, she may have been able to defeat Debtor's filing of the Plan. However, if Mrs. Starr had been able to thwart Debtor's Plan, in light of the Bank's unwillingness to: (i) continue Debtor's use of cash collateral; and/or (ii) lend additional money for business operations without additional collateral, the only alternative would have been immediate liquidation. Under a liquidation scenario, all of the rights Mrs. Starr asserts that she has regarding membership in Debtor would be worthless.

Mrs. Starr also argues that she is entitled to a stay because settlement negotiations by and between Debtor, Ray Starr's probate estate and herself fell apart. Mrs. Starr appears to have filed her appeal as a litigation tactic and is now frustrated that she must either pursue or abandon the appeal. Indeed, Mrs. Starr asserts that she "has been *forced* to pursue her appeal" as a result of the "delay on [sic] settlement" and the "filing of the Bill of Sale and Notices of Closing of Sale." (Mot. for Stay ¶ 10 (emphasis added).) Despite her frustration, however, there is no merit to Mrs. Starr's implied argument that she has been harmed in some unspecified manner because Debtor failed to make a settlement offer "by January 26, 2010." (*Id.* ¶¶ 4 and 7.) Having filed her Notice of Appeal on January 8, 2010, Mrs. Starr was required to designate the record and issues on appeal no later than January 22, 2010—14 days after she filed the Notice of Appeal. *See* FED. R. BANKR.P. 8006 (West 2009). Because Mrs. Starr was required to timely prosecute her appeal prior to the date that she alleges a settlement offer was due, there can be no harm to Mrs. Starr in connection with breakdown of the settlement negotiations.

**3. IRREPARABLE HARM TO OTHERS.** Although Mrs. Starr alleges that no other party will be harmed if implementation of the Plan is stayed, the facts contradict this contention. Mrs. Starr acknowledges that Debtor has liquidated substantially all of its assets through the sale to Buyer. Buyer now owns the assets Debtor formerly used to operate its business. Without any foundation whatsoever, Mrs. Starr asserts that no party will be harmed by a stay because "[c]ontinued operation of the Debtor as a debtor in possession pending the appeal of the confirmation order will adequately protect all affected parties." (Mot. for Stay ¶ 19.) The scenario of continued operation of "Debtor as a *debtor in possession*," however, is simply not an option—whether or not a stay is imposed at this time. There is no factual or legal support for the statement that Debtor can continue to operate the business as a debtor-in-possession pending appeal. To the contrary, Debtor has no assets and no business whatsoever to operate. Buyer—not Debtor—currently has the right to operate the business and is operating the business. (Buyer's Obj. to Stay ¶¶ 5, 6, 8 and 9.) As noted in Debtor's Objection to Stay, "[a] stay of effectiveness of the Plan would be the deathknell for the business. Because there are no operations to sustain and,

obviously, a stay would kill any deal that [Buyer] has for financing with [Bank] ...." (Debtor's Obj. to Stay ¶ 17.) This argument is echoed in Buyer's Objection to Stay, "Unwinding [Buyer] would likely lead to a break-down of financing by [Bank], the demise of [Buyer], the loss of jobs by employees of [Buyer], and the loss of a tenant by Fountain Valley." (Buyer's Obj. to Stay ¶ 11.)

If this Court were to stay implementation of the confirmed Plan, immediate liquidation of Debtor's assets would necessarily follow because neither Debtor nor Buyer would have the ability to operate the business. (Debtor's Obj. to Stay ¶ 27.) Indeed, Debtor had proposed that it continue operation of the business when Debtor filed its first Plan of Reorganization ("First Plan") (Doc. # 98) on July 18, 2009. Debtor withdrew the First Plan (Doc. # 126) on September 29, 2009, however, because the Bank, as Debtor's secured lender, would not continue to provide funding without additional security. In the event of a "fire sale" liquidation, the Bank's secured claim would most likely not be paid in full, leaving nothing for distribution to other creditors or equity holders.

Mrs. Starr argues that Roy Crick "controls" (i) Debtor; (ii) Buyer; (iii) the Ray A. Starr Trust, as the owner of Buyer; (iv) Fountain, which is the owner of the real estate upon which Debtor operated its business ("Real Estate"); and (v) Ray Starr's probate estate. (Mot. for Stay ¶ 15.) Because of such alleged "control," Mrs. Starr argues—without further explanation—that none of these entities will be harmed by imposition of a stay pending appeal. There is no question that the connection between Debtor and the other entities through Mr. Crick was known, disclosed and, indeed, necessary for the Plan to be accepted by the Bank. There is no evidence that the sale of Debtor's business assets to Buyer was anything but at arm's length, in good faith and for full value. As such, Buyer is a good faith purchaser as set forth in 11 U.S.C. § 363(m). Section 363(m) provides:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363 (West 2009).

Moreover, Debtor's authorization to use cash collateral has ceased.[4] Mrs. Starr inexplicably fails to recognize that Debtor cannot operate the business without authorization to use the Bank's cash collateral, which has expired. At the Confirmation Hearing, John K. Lane of Inglewood Associates LLC testified that the Bank, which holds a valid, first priority security interest in all of Debtor's property, required additional security as a condition for future financing for the business. As set forth above, Debtor had to withdraw its First Plan because the Bank would not continue to fund Debtor without additional security. Mr. Lane suggested that additional security could be obtained through a mortgage on the Real Estate. The Real Estate, however, is owned by Fountain—not Debtor. It was for this reason that Debtor agreed to sell substantially all of

---

4. Debtor filed Amended Notice of Closing of Sale Under First Amended Chapter 11 Plan of Liquidation [sic] and Cessation of Cash Collateral ("Notice of Sale") (Doc. # 178) on January 29, 2010.

its assets to Buyer, which is an entity that could provide the required security to the Bank. Mr. Lane further testified that Debtor would not be able to continue to operate without letters of credit, which Debtor could not obtain without the Bank's willingness to lend more money. The Bank agreed to lend to Buyer, as provided for in the Plan. Buyer and the Bank have finalized financing arrangements, which will keep the business in operation. (Buyer's Obj. to Stay ¶¶ 5 and 9.) Buyer's operation of the business does not and cannot constitute—and is not the same as—Debtor operating the business as a debtor-in-possession.

Mrs. Starr states that the Bank will not be harmed by this Court's issuance of a stay because the Bank "contemplated a stay pending appeal and chose to allow the provisions which required it to wait for the Effective Date[.]" (Mot. for Stay ¶ 17.) Contrary to this statement, however, there is no indication that any stay was "contemplated." Mrs. Starr refers to Article XI of the Plan, which is styled "Conditions to Confirmation and Effectiveness," and which sets forth conditions to effectiveness of the Plan in subsection (C). This subsection merely notes that Buyer and the Bank can, by written agreement, cause the Effective Date to occur even if the Confirmation Order has not become a Final Order, *unless* a stay has been imposed or the order has been vacated. This provision merely reflects the effect of a stay or vacation of the Confirmation Order, which would prevent action by Buyer and Bank; it does not reflect that a stay was contemplated.

*4. PUBLIC INTEREST.* The fourth factor for the Court to balance is the public interest. Imposition of a stay will result in shutdown of Buyer's business, the loss of jobs and the loss of Fountain's tenant for the Real Estate. (Buyer's Obj.

to Stay ¶ 11.) Loss of jobs and harm to Buyer's employees, as well as loss of rental income to Fountain, require a finding that the public interest would not be served if this Court issued the requested stay.

### III. THE COURT CANNOT "UNDO" THE SALE TO BUYER

Liquidation of Debtor's assets was the primary objective of the Plan and has been accomplished. Despite attempting to disguise her request as a stay of "confirmation" of the Plan, Mrs. Starr apparently seeks reversal of the sale to Buyer and return to the state of affairs prior to the Confirmation Hearing. The Court, however, cannot "undo" Debtor's sale of its business to Buyer, which occurred properly and in accordance with the confirmed Plan. To the extent Mrs. Starr's alleged rights are or may be contingent on Debtor operating the business as a debtor-in-possession, she should have sought and obtained a stay prior to consummation of Debtor's sale of its assets to Buyer. For more than one month Mrs. Starr failed to take any action to seek a stay pending appeal. Whether or not this Court now issues a stay, the result is the same: Debtor has no business to operate as a debtor-in-possession. Debtor, having sold its assets to Buyer, has no business to operate—even if, in the future, Mrs. Starr becomes the owner of any Membership Units. Mrs. Starr's statement that Debtor can continue to operate the business as a debtor-in-possession until the appeal concludes is not grounded on any facts, but is pure fiction.

### IV. CONCLUSION

As set forth above in detail, Mrs. Starr has failed to meet her burden under Federal Rule of Bankruptcy Procedure 8005. Applying the four-factor balancing test required in this Circuit, this Court finds no basis whatsoever to stay implementation of

the confirmed Plan. Mrs. Starr's Motion for Stay is based on the faulty premise that no harm will come to any other entity because Debtor can continue to operate the business despite closing of the sale of its assets to Buyer. Contrary to Mrs. Starr's statement that no party would be harmed if this Court were to issue a stay, every other party—Buyer, the Bank, Fountain, other creditors, and Buyer's employees—would be harmed. Because substantially all of Debtor's assets have been sold pursuant to the confirmed Plan, only distribution to creditors can be stayed. Mrs. Starr has articulated no reason to stay "confirmation" or further implementation of the Plan.

The Motion for Stay will be denied. An appropriate Order will follow.

**IT IS SO ORDERED.**

## ORDER DENYING MOTION FOR STAY PENDING APPEAL

Before the Court is Motion for Stay Pending Appeal ("Motion for Stay") (Doc. #190) filed on February 9, 2010, by Beverly A. Starr ("Mrs. Starr"). The Motion for Stay relates to Notice of Appeal (Doc. #167) filed by Mrs. Starr on January 8, 2010, which appeals: (1) Memorandum Opinion Regarding Motion to Dismiss (Doc. #48) and Order Denying Motion to Dismiss entered on April 9, 2009 (Doc. #49); and (2) Memorandum Opinion Regarding Confirmation of First Amended Chapter 11 Plan of Liquidation (Doc. #160) and Order: (i) Overruling Objection of Beverly A. Starr; (ii) Determining Ballot of Beverly A. Starr Shall Not be Counted; and (iii) Confirming First Amended Chapter 11 Plan of Liquidation entered on December 30, 2009 (Doc. #161). On February 12, 2010, two objections were filed in response to the Motion for Stay, as follows: (i) Debtor Player Wire Wheels, Ltd. ("Debtor") filed Debtor's Objection to the Motion of Beverly A. Starr for Stay Pending Appeal (Doc. #192); and (ii) Player Wheel Group, Ltd. ("Buyer") and Fountain Valley Holdings, Ltd. ("Fountain") filed Objection to Motion for Stay (Doc. #194). On February 19, 2010, Mrs. Starr filed Reply Brief in Support of Motion for Stay Pending Appeal (Doc. #195).

For the reasons set forth in this Court's Memorandum Opinion Regarding Motion for Stay Pending Appeal entered on this date, this Court hereby finds that Mrs. Starr has failed to carry the burden imposed by Federal Rule of Bankruptcy Procedure 8005, specifically: (i) Mrs. Starr failed to demonstrate any likelihood that she will prevail on the merits of her appeal; (ii) Mrs. Starr failed to demonstrate that she will suffer irreparable harm unless a stay is imposed; (iii) imposition of a stay will cause substantial harm to all other interested parties—Buyer, PNC Bank, Fountain, other creditors, and Buyer's employees; and (iv) the public interest would not be served by imposition of a stay. Accordingly, this Court denies Mrs. Starr's Motion for Stay.

**IT IS SO ORDERED.**